## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CPFL ENERGIAS RENOVÁVEIS S.A.** | ) | |
| Av. Dr. Cardoso de Melo, | ) | |
| 1184 - 7° andar | ) | |
| Vila Olímpia | ) | ███████████████ |
| São Paulo – SP | ) | |
| CEP: 04548-004 | ) | |
| BRAZIL | ) | |
| | ) | |
| Petitioner, | ) | C. A. No. 19-cv-204-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| **BLACK RIVER COMMODITY** | ) | **REDACTED PUBLIC VERSION** |
| **INVESTMENT PARTNERS FUND LLC** | ) | |
| 9320 Excelsior Boulevard | ) | |
| Hopkins, Minnesota 55343 | ) | |
| | ) | |
| Serve: | ) | |
|     Registered Agent | ) | |
|     The Corporation Trust Company | ) | |
|     Corporation Trust Center | ) | |
|     1209 Orange Street | ) | |
|     Wilmington, DE 19801 | ) | |
| | ) | |
| Respondent. | ) | |

### PETITION TO ENFORCE A FOREIGN ARBITRAL AWARD

Petitioner, CPFL ENERGIAS RENOVÁVEIS S.A. ("CPFL"), petitions this Court to recognize and enforce a foreign arbitral award dated November 8, 2018 (the "Partial Award") rendered in favor of CPFL against Respondent Black River Commodity Investment Partners Fund LLC ("Black River Commodity"), as set forth below.

### NATURE OF THE ACTION

1.     CPFL filed a Request for Arbitration with the International Court of Arbitration of the International Chamber of Commerce ("ICC") on December 15, 2017 against seven respondents, one of whom was Black River Commodity, arising from a corporate acquisition

involving the sale of shares by the respondents in an entity known as Jantus SL to CPFL in 2011.



2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3. The arbitration is pending. ▮▮▮▮▮▮▮▮▮▮▮▮

*See*

Declaration of Daniel T. Burbeary, dated January 30, 2019, ¶ 6 (hereinafter "Burbeary Decl.").[1]

4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CPFL submitted an

application to the Tribunal seeking, inter alia, ▮▮▮▮▮▮▮▮▮▮

5. The Tribunal granted CPFL's application ▮▮▮▮▮▮▮▮ in a Partial

Award dated November 8, 2018. CPFL attaches a certified copy of the Partial Award as Exhibit

A to the Burbeary Declaration. Burbeary Decl., ¶ 8, Ex. A.

6. By letter dated November 20, 2018, CPFL notified Black River Commodity of the

Partial Award and solicited Black River Commodity's confirmation that it would honor the

Partial Award. To date, Black River Commodity has not responded. CPFL attaches a true and

---

[1] Mr. Burbeary is CPFL's lead counsel in the ICC arbitration and is a partner with COOKE
YOUNG & KEIDEN LLP, of London, England. Burbeary Decl., ¶¶ 2-5.

correct copy of the letter as Exhibit B to the Burbeary Declaration.  Burbeary Decl., ¶ 9, Ex. B.

## NATURE OF RELIEF SOUGHT

7.      CPFL respectfully requests that this Court recognize and enforce the Partial

Award as a judgment of this Court.

8.      The Partial Award is final and enforceable pursuant to the Inter-American

Convention on International Commercial Arbitration of 1975, *opened for signature* Jan. 30,

1975, OAS SER A20 (SEPEF), 14 I.L.M. 336 (1975) ("Panama Convention"), which is

implemented in the United States pursuant to Chapter 3 of Title 9 of the U.S. Code (9 U.S.C.

§§ 301 *et seq.*).

9.      In the alternative, the Partial Award is a final and enforceable award pursuant to

the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards,

21 U.S.T. 2517, T.I.A.S. No. 6997, 390 U.N.T.S. 38 (1970) (the "New York Convention"),

which is implemented in the United States pursuant to Chapter 2 of Title 9 of the U.S. Code (9

U.S.C. §§ 201 *et seq.*).

10.     In accordance with the statutory mandate of Congress and the treaty obligations

undertaken by the United States pursuant to the Panama Convention and New York Convention,

this Court must recognize and enforce the Partial Award "unless it finds one of the grounds for

refusal or deferral of recognition or enforcement of the award specified in the said Convention."

9 U.S.C. § 207; 9 U.S.C. § 302 (incorporating 9 U.S.C. § 207 by reference).  The grounds

specified for non-recognition of a foreign arbitral award are extremely limited under the Panama

Convention, even more limited than the narrow grounds to seek vacatur of a domestic arbitral

award pursuant to Chapter 1 of the Federal Arbitration Act (9 U.S.C. §§ 10, 11).

11.     There is no basis for the Court to decline recognition and enforcement here.

Accordingly, CPFL respectfully avers that it is entitled to immediate recognition and enforcement of the Partial Award.

## PARTIES

12.      CPFL ENERGIAS RENOVÁVEIS S.A. is a foreign corporation duly organized and existing under the laws of the nation of Brazil, and whose principal place of business is located at Av. Dr. Cardoso de Melo, 1184, 7th floor, Vila Olimpia, City of São Paulo, State of Sao Paulo, Brazil, CEP 04548-004.

13.      Respondent BLACK RIVER COMMODITY INVESTMENT PARTNERS FUND LLC is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 9320 Excelsior Blvd., Hopkins, Minnesota 55343.

## JURISDICTION

14.      This Court has subject matter jurisdiction (federal question) over this Petition pursuant to Chapter 2 and Chapter 3 of the Federal Arbitration Act, 9 U.S.C. §§ 203 and 302, because this action falls under the Panama Convention, or alternatively, under the New York Convention.

15.      This Court also has subject matter jurisdiction (diversity) over this Petition under 28 U.S.C. § 1332 because CPFL is a citizen of a foreign state, Black River Commodity is a citizen of a state in the United States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

16.      The Partial Award is governed by the Panama Convention because: (i) the award arose from a commercial legal relationship between the parties; (ii) there was an agreement in writing to arbitrate any dispute arising from that relationship; (iii) the seat of the arbitration

4

agreed to by the parties was Brazil, which is a signatory to the Panama Convention; (iv) a majority of the parties to the arbitration agreement are citizens from nations which are signatories to the Panama Convention and member States of the Organization of American States; and (v) at least one of the parties is not an American citizen.  *See* 9 U.S.C. §§ 304-305.

17.     In the alternative, the Partial Award is governed by the New York Convention because: (i) the award arose from a commercial legal relationship between the parties; (ii) there was an agreement in writing to arbitrate any dispute arising from that relationship; (iii) the seat of the arbitration agreed to by the parties was Brazil, which is a signatory to the New York Convention; and (iv) at least one of the parties is not an American citizen.  *See* 9 U.S.C. § 202.

18.     This Court has personal jurisdiction over Black River Commodity as the limited liability company is registered and organized under the laws of the State of Delaware.

19.     This Petition is timely pursuant to 9 U.S.C. § 207 because it is filed within three years of the date the Partial Award was signed on November 8, 2018.

**VENUE**

20.     Venue, recognition, and enforcement is proper in this district under 9 U.S.C. § 204 and 28 U.S.C. § 1391 because the Respondent is a limited liability company organized under the laws of the State of Delaware and is registered to do business there.

**BACKGROUND FACTS**

**A.     The Sale and Purchase Agreement**

21.     The contractual relationship between the parties to this action is governed by the Agreement for the Sale and Purchase of Jantus SL (the "Agreement"), which has an effective date of April 7, 2011.  Ex. C.

22.     CPFL attaches a true and correct copy of the Sale and Purchase Agreement as

Exhibit C to the Burbeary Declaration.  Burbeary Decl., ¶ 10, Ex. C.

23.    The Agreement contains a provision (Clause 25) whereby the parties to the

transaction agreed to resolve their disputes by means of final, binding, and mandatory arbitration

under the Arbitration Rules of the ICC.

**B.    The Arbitration Clause**

24.    Clause 25 of the Agreement is the governing law and dispute resolution provision

and provides as follows:

25.    GOVERNING LAW AND DISPUTE RESOLUTION

25.1 This Agreement, and all non-contractual obligations arising from or
connected with this Agreement, are governed by, and shall be construed in
accordance with, English law.

25.2 Any dispute arising from or connected with this Agreement (including a
dispute regarding the existence, validity or termination of this Agreement or the
consequences of its nullity) (a "Dispute"), will be referred to and finally resolved
by arbitration under the "Arbitration Rules" of the ICC (the "Rules"), which
Rules are deemed to be incorporated by reference into this Clause 25 (Governing
law and dispute resolution).

25.3 The tribunal will consist of three arbitrators, one of whom will be nominated
by the Purchaser, one will be nominated by the Sellers, and the third, who shall
act as chairman, shall be nominated by the other two arbitrators together (but
failing agreement within 30 days of the appointment of the second arbitrator,
the third arbitrator shall be appointed by the ICC). Subject to the foregoing, the
arbitrators may be citizens of any country. The seat of the arbitration will be São
Paulo, Brazil, and the language of the arbitration will be English.

25.4 If more than Parties are party to the arbitral proceeding, the multiple
claimants and/or the multiple respondents shall appoint their respective arbitrator.
In the absence of such a joint appointment by one of the sides, all three arbitrators
shall be designated and appointed in accordance with the Rules, with one of them
to act as chairman.

25.5 The parties agree that the arbitral tribunal will have power to award on a
provisional basis any relief that it would have power to grant on a final award.

25.6 Without prejudice to the powers of the arbitrator provided by the Rules,
statute or otherwise, the arbitrator will have power at any time, on the basis of

written evidence and the submissions of the Parties alone, to make an award in favour of the claimant (or the respondent if a counterclaim) in respect of any claims (or counterclaims) to which there is no reasonably arguable defence, either at all or except as to the amount of any damages or other sum to be awarded.

25.7 The Parties agree to treat all materials used in, and details of all awards received as a result of, any Dispute proceedings as Confidential Information in accordance with Clause 17 (Confidential Information).

25.8 The Parties exclude any rights to refer points of law or to appeal to the courts, to the extent that they can validly waive these rights.

25.9 This Clause 25 (Governing Law and Jurisdiction) applies to all Proceedings in connection with a Dispute wherever started.

25.     The Arbitration provision is valid, has not been revoked, and is enforceable against Black River Commodity upon such grounds as exist at law or in equity and as stated in the Partial Award.

### C.     The ICC Arbitration

26.     A dispute arose between CPFL as the purchaser of shares of Jantus SL on the one hand, and the sellers of shares of Jantus SL on the other hand, over ██████████████ ████████████████████████████████████████ *See* Ex. A, Partial Award, ¶ 4.

27.     On December 15, 2017, CPFL filed a Request for Arbitration with the ICC, identified as Case No. 23294/JPA, pursuant to the Agreement's arbitration provision. *See* Ex. A, Partial Award, ¶ 4.

28.     CPFL's Request for Arbitration seeks a declaration from the Tribunal that Black River Commodity, along with the other sellers, ████████████████████████ ████████████████████████████. *See* Ex. A, Partial Award, ¶ 4.

29.     The seat of the arbitration is Sao Paulo, Brazil, per Clause 25.3 of the Agreement. *See* Ex. A, Partial Award, ¶ 47.

30.     The ICC confirmed the Tribunal pursuant to Clause 25 of the Agreement.  *See* Ex.

A, Partial Award, ¶ 22.  The Tribunal consists of Mr. Nigel Tozzi QC, Lord Neuberger, and Ms.

Judith Gill QC.  *Id.*

31.     The arbitration is governed by the 2017 Rules of Arbitration of the ICC ("ICC

Rules").  *See* Ex. A, Partial Award, ¶ 11.

32.      Article 6 of the ICC Rules provides that the arbitrators have the authority to

decide their own jurisdiction, unless the Secretary General of the ICC refers the matter to the

ICC Court.  Article 6(3) states:

> If any party against which a claim has been made does not submit an Answer, or
> if any party raises one or more pleas concerning the existence, validity or scope of
> the arbitration agreement or concerning whether all of the claims made in the
> arbitration may be determined together in a single arbitration, *the arbitration shall*
> *proceed and any question of jurisdiction or of whether the claims may be*
> *determined together in that arbitration shall be decided directly by the arbitral*
> *tribunal*, unless the Secretary General refers the matter to the Court for its
> decision pursuant to Article 6(4).

(Emphasis added.)

33.     Article 28(1) of the ICC Rules authorizes tribunals to award conservatory

measures, stating: "Unless the parties have otherwise agreed, as soon as the file has been

transmitted to it, *the arbitral tribunal may, at the request of a party, order any interim or*

*conservatory measure it deems appropriate*."  (Emphasis added.)

34.     Section 25.5 of the Agreement provides that "The parties agree that the arbitral

*tribunal will have power to award on a provisional basis any relief* that it would have power to

grant on a final award."  Ex. C, Sec. 25.5 (emphasis added.)

**C.      Black River Commodity's** ███████████████████████████
        ██████

35.     After receiving a copy of CPFL's Request for Arbitration from the ICC, ████



36.

37.

38.

39. ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
██████████

40. ████████████████████████████████
████████████████████████████████
███████████████████████

41. ████████████████████████
████████████████████████████
████████████████████████████
██████████████████████████
████████████████████████████
████████████████████

42. ████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
██████████████████████████
████████████████████████████

████ **CPFL Submits Application for** ████████████ **Following Black River Commodity's** ████████

44. ████████████████████████████
██████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████

45.     Notably, the other Respondents who filed papers after CPFL submitted its

application for █████████████████ did not object to ████████████████████████

████████████████. *See* Ex. A, Partial Award, ¶ 78.

46.     CPFL, via counsel, served copies of CPFL's applications █████████████████

████████████████████████ on Black River Commodity via Black River

Commodity's former counsel and its registered agent in Delaware.  Burbeary Decl., ¶ 7.

47.     Following written submissions and an oral hearing before the Tribunal, the

Tribunal issued a Partial Award dated November 8, 2018, ███████████████████████

███████████████████████████████████████████████████████.

*See* Ex. A, Partial Award, ¶¶ 42-59 (████████████); ¶¶ 60-88 (███████████████████).

48.     █████████████████████████████████████████████████

███████████████████

49.     The Tribunal ruled in the Partial Award that ██████████████████████

████████████████████████████████████

50.     █████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████

51.     In its application, CPFL asserted that ████████████████████████████

███████████████████████████████████████████████████

11



[redacted]

52. [redacted]

[redacted] The Tribunal examined the evidence [redacted]

54. After finding [redacted], the Tribunal then granted [redacted]. *See* Ex. A, Partial Award, ¶¶ 79-88.

55. [redacted]

[redacted] The Partial Award also includes [redacted]

███████████████████████████████████████████

███████████████

## ARGUMENT

**A.    The Court Should Recognize and Enforce the Foreign Arbitral Award**

57.     The recognition and enforcement of a foreign arbitral award is a summary proceeding in which this Court looks only at the agreement to arbitrate and the award itself. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("[T]he confirmation of an [arbitral] award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."); *American Life Ins. Co. v. Parra*, 269 F. Supp. 2d 519, 524 (D. Del. 2003) (same, confirming arbitral award pursuant to the Panama Convention); *Banco de Seguros de Estado v. Mutual Marine Offices, Inc.*, 257 F. Supp. 2d 681, 685 (S.D.N.Y. 2003) (same).

58.     A court's review of arbitral awards is "very limited ... to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Accordingly, "the showing to avoid summary confirmation is high." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

59.     The Partial Award is the result of an international arbitration proceeding governed by the Panama Convention, which the United States has signed and ratified and is implemented by Chapter 3 of Title 9 of the U.S. Code. *See* 9 U.S.C. § 301 *et seq.*[2]

---

[2] Although governed by the Panama Convention, the Partial Award is also enforceable under the New York Convention in the alternative.  CPFL relies on New York Convention case law as well as case law on the Panama Convention because there are no material differences in the recognition and enforcement of the Partial Award under the respective conventions. *See, e.g.,*

60.     Section 302 of Title 9 applies the provisions of Section 207 of Title 9 to awards

under the Panama Convention.  9 U.S.C. § 302 ("Sections 202, 203, 204, 205, and 207 of this

title shall apply to this chapter as if specifically set forth herein, except that for the purposes of

this chapter 'the Convention' shall mean the Inter-American Convention.").  Section 207

provides:

> Within three years after an arbitral award falling under the Convention is made,
> any party to the arbitration may apply to any court having jurisdiction under this
> chapter for an order confirming the award as against any other party to the
> arbitration.  The court shall confirm the award unless it finds one of the grounds
> for refusal or deferral of recognition or enforcement of the award specified in the
> said Convention.

9 U.S.C. § 207; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) ("[t]he

goal of the [New York] convention, and the principal purpose underlying American adoption and

implementation of it, was to encourage the recognition and enforcement of commercial

arbitration agreements and international contracts and to unify the standard by which the

agreements to arbitrate are observed and arbitral awards are enforced in the signatory

countries").

61.     A majority of the parties to the Agreement are citizens of countries which are

parties to the Convention and member States of the Organization of American States,

---

*Employers Ins. of Wausau v. Banco de Seguros Del Estado*, 199 F.3d 937, 941 n.1 (7th Cir.
1999) ("the provisions of both [New York and Panama] conventions are interpreted to reach the
same result"); H.R. REP. NO. 501, 101st Cong., 2d Sess.  4 (1990), reprinted in 1990
U.S.C.C.A.N. 675, 678 ("[t]he New York Convention and the [Panama] Convention are intended
to achieve the same results, and their key provisions adopt the same standards, phrased in the
legal style appropriate for each organization. It is the Committee's expectation, in view of that
fact and the parallel legislation under the Federal Arbitration Act that would be applied to the
Conventions, that courts in the United States would achieve a general uniformity of results under
the two conventions").

specifically, Brazil and the United States.[3]

62.     The seat of the arbitration is Sao Paulo, Brazil.  *See* ¶ 24, *supra*; Ex. C., Clause 25.3.

63.     Accordingly, recognition and enforcement of the Partial Award falls under the Panama Convention.  9 U.S.C. § 305.  *See also Parra,* 269 F. Supp. 2d at 524 (Panama Convention applied to enforcement proceeding between citizens of Argentina and Uruguay); *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1371-72 (S.D. Fla. 2003) (Panama Convention applied to enforcement proceeding between citizens of Panama and the United States as "[b]oth Panama and the United States have ratified the Inter-American Convention").

64.     The Panama Convention provides in Article I that "[a]n agreement in which the parties undertake to submit to arbitral decision any differences that may arise or have arisen between them with respect to a commercial transaction is valid."  Panama Convention, Art. 1. There can be no reasonable dispute that this ICC arbitration is with respect to a commercial transaction ██████████████████████████████████████████████████████████ ████████████████████████.  The Sale and Purchase Agreement and the Partial Award both demonstrate that this dispute is "with respect to a commercial transaction."

65.     The Tribunal had authority ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████

66.     U.S. courts have enforced partial awards ████████████████████████████████

---

[3] Of the 16 parties to the Sale and Purchase Agreement, 9 of the parties are citizens of Brazil, and one is a citizen of the United States.  *See* Burbeary Decl., ¶ 11, Ex. C, at numbered pages 1-2.

████████████████████████████████████████████████████████████████

████ *See, e.g., Yasuda Fire & Marine Ins. Co. of Europe, Ltd v. Cont'l Cas. Co.*, 37 F.3d 345,

348 (7th Cir. 1994) (holding that a tribunal's order to post an interim letter of credit to protect a

possible final award constituted an "award" and therefore could be confirmed or challenged).

67.     The Partial Award demonstrates that ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

**B.     None of the Limited and Narrow Grounds for Refusal or Deferral of Enforcement Exists Here**

68.     The Panama Convention provides that covered awards must be enforced except

on very specific and limited grounds.  Panama Convention, Article V.  Moreover, the U.S.

implementing statute provides that "[t]he court shall confirm the award unless it finds one of the

grounds for refusal or deferral of recognition or enforcement of the award specified in the"

Panama Convention.  9 U.S.C. § 207; 9 U.S.C. § 302.  *See also Parra*, 269 F. Supp. at 524;

*Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F. Supp.  2d 1020, 1024 (S.D. Cal.

2000) (same).  "The burden of proof is on the party defending against enforcement of the arbitral

award" under the Panama Convention.  *Empresa*, 106 F. Supp. 2d at 1024.

69.     There are only two substantive grounds on which a court may refuse to enforce an

award: if "the subject of the dispute cannot be settled by arbitration under the law of that State"

16

or if "the recognition or execution of the decision would be contrary to the public policy ('ordre public') of that State." Panama Convention, Art. 5.2. Neither substantive exception is applicable here.

70.     Far from prohibiting the resolution of commercial disputes such as CPFL's and Black River Commodity's by binding arbitration, U.S. law and public policy strongly encourages arbitration of such disputes and the recognition of resulting awards. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985) (noting the strong "federal policy in favor of arbitral dispute resolution, a policy that applies with special force in the field of international commerce"); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (discussing the "liberal federal policy favoring arbitration").

71.     The Convention also allows a court in a signatory country to decline enforcement if the party against which enforcement is sought meets its substantial burden of establishing that one of the following procedural grounds exists:

    a.   That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or

    b.   That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or

    c.   That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration; nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

    d.   That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or

     e.   That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

Panama Convention, Art. 5.1(a-e).

72.    None of these procedural exceptions to enforcement applies here.

73.    Black River Commodity participated in the arbitration ████████████, thus it had notice and an opportunity to be heard. *See Employers Ins. of Wausau v. Banco Seguros Del Estado*, 34 F. Supp. 2d 1115, 1120 (E.D. Wis. 1999) (rejecting argument that respondent had not been properly notified of the arbitration pursuant to Article 5(1)(b) of the Panama Convention upon finding that Respondent was notified of the arbitral proceedings when it had been served with papers for a motion to compel arbitration in a court action); *Anhui Provincial Import & Export Corp. v. Hart Enters. Int'l, Inc.*, 1996 WL 229872, *3 (S.D.N.Y. 1996) (respondent had been properly notified under Article V(l)(b) of the New York Convention when Claimant showed that Respondent was "aware" of the arbitration as set forth in a letter Respondent had written asking Claimant to suspend the arbitration proceedings pending resolution of a related court action).

74.    ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

75.    CPFL provided Black River Commodity with every opportunity to engage with and respond to CPFL's applications and to attend the hearing before the Tribunal at which the questions of ████████████████ were considered, both before and after Black River Commodity ████████████████. Burbeary Decl., ¶ 7.

76.    The Tribunal correctly found that ████████████████████████████

██████████████████████████████████████

████████████████████████████   *See* Ex. A, Partial Award, ¶¶ 52-59.

77.     As stated by a leading commentator, Professor Gary B. Born: "It is well-settled that an entity [non-signatory] that does not execute an arbitration agreement may become a party thereto by way of legal succession."  Gary B. Born, INTERNATIONAL COMMERCIAL ARBITRATION, § 10.02[G] (2d ed. 2014).  Professor Born also notes that the "consequence of such 'mergers' or 'business combinations' is that the 'surviving' entity will be the owner of all the assets and liabilities (including contract rights and obligations) of the previously-existing entity."  *Id.* (citation omitted).

78.     The Agreement specified that ICC Rules would apply.  *See*      ¶ 24, *supra*.  The ICC Rules delegate to the arbitrators the question of arbitrability, and U.S. courts recognize the authority of arbitrators to determine their own jurisdiction over the parties where applicable rules of the arbitral institution provide as such.  *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,* 809 F.3d 746, 763-64 (3d Cir. 2016) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" in the context of bilateral arbitration disputes); *Adtile Technologies, Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 525 (D. Del. 2016).

79.     As there is no basis to decline enforcement, CPFL therefore is entitled to immediate recognition and enforcement of the Partial Award under the Panama Convention and respectfully requests that the Court enter judgment accordingly.[4]

---

[4] The grounds for non-recognition specified in the New York Convention are substantively identical to those specified in the Panama Convention.  *Compare* New York Convention,

**CLAIMS FOR RELIEF**
**(9 U.S.C. § 207; 9 U.S.C. §§ 301-302)**

**First Claim for Relief**
**(Recognition and Enforcement of the Partial Award)**

80.     Petitioner CPFL realleges and incorporates by reference paragraphs 1 through 79 above.

81.     Pursuant to the Panama Convention, as implemented in Chapter 3 of Title 9 of the U.S. Code, the Partial Award should be recognized and enforced by this Honorable Court.

82.     The Sale and Purchase Agreement constitutes a written agreement between the parties to arbitrate their disputes.

83.     Article IV of the Panama Convention, as implemented in 9 U.S.C. §§ 301, 302, and 304, requires that each signatory State to the Convention must recognize and enforce foreign arbitral awards.

84.     Brazil and the United States of America are both signatory states to the Panama Convention and member States of the Organization of American States.

85.     Under 9 U.S.C. § 207 (incorporated by reference by 9 U.S.C. § 302), the Court "…shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

86.     Article V of the Panama Convention sets forth the limited grounds for refusal of recognition or enforcement.

87.     None of the grounds set forth in Article V of the Panama Convention are present here such that this Court could refuse recognition and enforcement of the Partial Award under 9

---

Articles 5-6, *with* Panama Convention, Articles 5-6.  Accordingly, while CPFL does not address the inapplicability of the New York Convention exceptions, none apply here for the same reason that none apply under the Panama Convention.

U.S.C. § 207.

88.      As of the date of this petition, Respondent has not satisfied its obligations under the Partial Award in whole or in part.

89.      Pursuant to 9 U.S.C. § 207 (incorporated by reference by 9 U.S.C. § 302), CPFL is entitled to entry of an Order recognizing and enforcing the Partial Award as a judgment of this Court and awarding CPFL such other and further relief as the Court deems just and proper.

**<u>Second Claim for Relief</u>**
**<u>(Recognition and Enforcement of the Partial Award)</u>**

90.      Petitioner CPFL realleges and incorporates by reference paragraphs 1 through 79 above.

91.      In the alternative, should the Court determine that the Panama Convention does not apply in this proceeding, CPFL avers that pursuant to the New York Convention, as implemented in Chapter 2 of Title 9 of the U.S. Code, the Partial Award should be recognized and enforced by this Honorable Court.

92.      The Sale and Purchase Agreement constitutes a written agreement between the parties to arbitrate their disputes.

93.      Under 9 U.S.C. §§ 201, 202, and 204, each signatory State must recognize foreign arbitral awards as binding and enforce them in accordance with local procedural law.

94.      Brazil and the United States of America are both signatory States under the New York Convention.

95.      Under 9 U.S.C. § 207, the Court "...shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

96.      Article V of the New York Convention sets forth the limited grounds for refusal

of recognition or enforcement.

97.    None of the grounds set forth in Article V of the New York Convention are present here such that this Court could refuse recognition and enforcement of the Partial Award under 9 U.S.C. § 207.

98.    As of the date of this petition, Respondent has not satisfied its obligations under the Award in whole or in part.

99.    Pursuant to 9 U.S.C. § 207, CPFL is entitled to the entry of an Order recognizing and enforcing the Partial Award as a judgment of this Court and awarding CPFL such other and further relief as the Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Petitioner CPFL respectfully requests that this Court enter an Order recognizing and enforcing the Partial Award which:



i.     █████████████████████████████████████ ; and

ii.    █████████████████████████████████████ ████████████████████████████ ████████████████████████████ and

iii.   ████████████████████████████ ████████████████████████████ ████████████████████████; and

iv.    award Petitioner such other relief as the Court deems just and equitable.

22

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Edmund M. Amorosi
(*pro hac vice* pending)
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Tysons Corner, VA 22182
Tel: (703) 847-6300
eamorosi@smithpachter.com

By:  */s/ John A. Sensing*
     John A. Sensing (#5232)
     1313 N. Market Street
     Hercules Plaza, 6th Floor
     P. O. Box 951
     Wilmington, DE  19899
     Tel: (302) 984-6000
     jsensing@potteranderson.com

*Attorneys for Petitioner CPFL Energias*
*Renováveis, S.A.*

Dated:  February 8, 2019
Originally Filed: January 31, 2019